### In re UTILITY OIL CORPORATION.

District Court, S. D. New York.
Dec. 26, 1934.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Edwin S. Murphy, of New York City, of counsel), for petitioner.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Roscoe H. Hupper and William J. Dean, both of New York City, of counsel), for respondent.

PATTERSON, District Judge.

The motions have to do with the conduct of an arbitration. The petitioner chartered the steamer Papoose from the respondent. After performance for some time a dispute arose, each party claiming that the other had not lived up to the provisions of the charter party. The respondent brought suit in admiralty against the petitioner on April 4, 1933. On April 29, 1933, the petitioner made demand by letter to the respondent that the dispute be arbitrated under an arbitration clause in the charter party, and at the same time notified the respondent that it had appointed one Warden "as arbitrator to represent us in the said arbitration." The arbitration clause in the charter party read: "any dispute arising during the performance of this Charter Party shall be settled by arbitration in New York, Owner and Charterer each appointing an Arbitrator, and the two thus chosen, if they cannot agree, nominating a third, whose decision shall be final. Should one of the parties neglect or refuse to appoint an Arbitrator within twenty-one days after receipt of request from the other party, the single Arbitrator appointed shall have the right to decide alone, and his decision shall be binding on both parties. For the purpose of enforcing any award this agreement shall be made a Rule of Court."

The respondent replied to the demand on May 1, 1933. The respondent took the position that the petitioner had repudiated the charter and that the arbitration clause had no relation to the dispute. It did not name an arbitrator within twenty-one days. The next move came on June 13, 1933, when the petitioner brought a petition in this court for an order directing the respondent to proceed to arbitration. The District Court dismissed the petition, on the ground that the dispute was not one governed by the arbitration clause; but on appeal to the Circuit Court of Appeals the order was reversed.

In re Utility Oil Corporation, 69 F.(2d) 524. On the mandate an order was entered here on April 4, 1934, granting the petition and directing the parties to proceed to arbitration. The respondent sought certiorari, which was denied by the Supreme Court on June 4, 1934. Petroleum Nav. Co. v. Utility Oil Corp., 292 U. S. 655, 54 S. Ct. 866, 78 L. Ed. 1504. It was thus determined with finality that the matter was one for arbitration.

Three days later the respondent gave written notice to the petitioner that it named one Smull as its arbitrator. The petitioner promptly rejected the notice as ineffective because not served within the time (twenty-one days) fixed by the arbitration clause. The petitioner had already notified the respondent that the arbitration would be brought on for hearing on June 15, 1934, before Warden as sole arbitrator. On the 15th the attorneys for both parties appeared before Warden. Smull, the respondent's arbitrator, was also present. The petitioner protested that Smull was not an arbitrator and refused to go on before Warden and Smull sitting together. The respondent took the opposite position, insisting that Warden and Smull were the arbitrators and declining to proceed before Warden alone. Warden then said that the hearing would be postponed until the question as to the personnel of the arbitrators should be cleared up.

■ With matters in this impasse the petitioner brought the present petition to compel the respondent to proceed to arbitration before Warden as single arbitrator. Its position is that by express provision of the charter party the failure of the respondent to name its arbitrator within twenty-one days after receiving written demand for arbitration vested the single arbitrator appointed by the petitioner with power to render a binding decision. This position finds warrant in the literal wording of the provision in the arbitration clause reading: "Should one of the parties neglect or refuse to appoint an Arbitrator within twenty-one days after receipt of request from the other party, the single Arbitrator appointed shall have the right to decide alone, and his decision shall be binding on both parties." Nevertheless I am of opinion that the case is one where the arbitration should be before two arbitrators, one chosen by each party, or before three in case of disagreement.

That the respondent was in entire good faith in resisting arbitration is beyond doubt. It had commenced suit on the charter party before arbitration was demanded by its adversary, and its stand that the dispute was outside the operation of the arbitration clause was sustained by the court of first instance. The refusal to name an arbitrator within twenty-one days was not due to caprice, perverseness, or desire for delay, but solely to a belief, mistaken but far from unreasonable, that the case was not one for arbitration. The rights of the parties must be determined then with the fact in mind that the respondent in good faith refused to appoint an arbitrator within the time fixed in the agreement and did appoint as soon as it was decided with finality that the matter was covered by the arbitration clause.

■ The United States Arbitration Act of 1925 (9 USCA § 1 et seq.), like the New York Arbitration Law (Consol. Laws, c. 72) which it closely follows, had for its purpose the extension of the remedy of specific performance to agreements for arbitration. Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 44 S. Ct. 274, 68 L. Ed. 582; Marchant v. Mead-Morrison Co., 29 F.(2d) 40, 42 (C. C. A. 2), certiorari denied 278 U. S. 655, 49 S. Ct. 179, 73 L. Ed. 565; In re Utility Oil Corporation, 69 F.(2d) 524, 526 (C. C. A. 2). When a party applies for an order under section 4 of the act (9 USCA § 4), to compel his opponent to proceed with arbitration, he is seeking relief in the nature of specific performance (Marchant v. Mead-Morrison Co., 252 N. Y. 284, 295, 169 N. E. 386), and must abide by the rules applied by courts of equity to cases of that type. Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 62 F.(2d) 1004, 1007 (C. C. A. 2). In such a case the agreement for arbitration will receive "a fair and equitable interpretation," in line with the dominant intent of the parties and wherever possible in harmony with the principles of law and equity applicable to arbitrations. American Eagle Fire Ins. Co. v. New Jersey Ins. Co., 240 N. Y. 398, 148 N. E. 562. And it is a familiar rule in suits for specific performance that equity does not treat a stipulation in respect of time as being of the essence of the contract unless the parties have very plainly made it so, despite the fact that a court of law would deem the time requirement to be of the essence. Brashier v. Gratz, 6 Wheat. 528, 5 L. Ed. 322; Taylor v. Longworth, 14 Pet. 172, 10 L. Ed. 405. If the situation of the parties has not changed and a party who is strictly in default has acted in good faith and has been reasonably dil-

igent, delay in his performance will generally not operate as a forfeiture. Schmidt v. Reed, 132 N. Y. 108, 30 N. E. 373.

■ The predominant purpose of the parties to this agreement, as in every arbitration, was to have their disputes determined by a board free from partiality. The parties were to go into the arbitration on even terms. One arbitrator was to be nominated by each party, and a third, if necessary, by the two first named. It is true that the agreement has a subordinate clause that on failure of a party to appoint an arbitrator within twenty-one days after demand, the arbitrator selected by his opponent shall act alone. The validity of the subordinate clause is beyond question, yet considerations of fairness and the evident purpose of the parties will prompt a court of equity to hold it down to strict limits. In the conduct of arbitrations it sometimes happens that an arbitrator puts loyalty to his nominator above his duty to be impartial. Such a practice is recognized as an unfortunate one and has been condemned. American Eagle Fire Ins. Co. v. New Jersey Ins. Co., supra, 240 N. Y. 398, at page 405, 148 N. E. 562. With all the arbitrators representing one party only, the party unrepresented would in some cases be at the mercy of his opponent and the result a foregone conclusion. In view of these possibilities, the fair and equitable interpretation of the agreement is that the parties intended this subordinate clause to operate where one party unreasonably neglected or refused to appoint its arbitrator within twenty-one days, and not in all manner of cases. If an appointment was made only two days late and the delay was due to mistake as to dates, few would be so carping as to contend that the appointment was ineffective and that the arbitrator appointed by the other party could decide the dispute alone. From this fact the fair conclusion is that the time of appointment was not regarded as of the essence under the arbitration clause.

If this is the proper construction of the agreement, the result here is plain. The respondent's refusal to appoint an arbitrator, while finally held to be untenable, was in good faith and not unreasonable. Both parties having already ceased performance under the charter party, the respondent saw the dispute as one not arising "during performance." As soon as its error was brought home, it was diligent in appointing. Under the circumstances the appointment was effective. The arbitration should be conducted before the two arbitrators, the two nominating a third if together they cannot agree on a decision.

This interpretation of the arbitration agreement is supported by the American Eagle Case, supra. There the agreement provided that if an arbitrator should resign after accepting the appointment, the party nominating him should elect another arbitrator. The arbitrator nominated by the respondents did resign, after the case had been finally submitted but before decision. The two remaining arbitrators ignored the resignation and proceeded forthwith to make an award. The Court of Appeals, reversing the lower courts, held the award valid. The prevailing opinion was written by Judge Pound. He wrote (240 N. Y. 398, at page 409, 148 N. E. 562, 565):

"Literally, the agreement provides that, if an arbitrator ceases to act, a substitute arbitrator shall be chosen. But the substitute clause need not be read so crabbedly as to permit an unreasonable result in flat contradiction of the common and statute law. The letter should be enlarged within legitimate bounds, rather than limited, when the end in view may thereby be more effectively accomplished.

"Under a fair and equitable interpretation of the submission agreement, a vacancy caused by the withdrawal of an arbitrator need not be filled after the case has been heard, considered, and practically decided."

■ Section 5 of the United States Arbitration Act (9 USCA § 5) is cited by the respondent but is not applicable. That provision empowers the court to appoint arbitrators in cases where no method of naming them is provided by the agreement and likewise in cases where for any reason there has been a lapse in naming them. In the present case there has been no lapse.

The remarks I have made as to the unfortunate results to be apprehended where arbitrations are conducted before arbitrators chosen by one party only are general and have no reference to the petitioner or the arbitrator nominated by it in this case. The standing of that arbitrator has not been questioned. Indeed, it is clear on the papers before me that he showed scrupulous fairness and impartiality in declining to go ahead with the arbitration until the controversy in respect of the personnel of the arbitrators had been cleared up, and I have no doubt that it will be a relief to him to

learn that he will not be called on to decide the case alone.

 It remains to consider a counter motion made by the respondent to vacate the order for arbitration entered on the mandate and also to vacate a stay of the suit in admiralty. The proposition is that the petitioner waived and abandoned the arbitration by refusing to arbitrate before the two arbitrators. But there was manifestly no waiver or abandonment. The petitioner pressed for arbitration all along. The only error it committed was one as to method, and it pursued the proper course by bringing the controverted point before the court.

The respondent's motion will be denied.