In the Matter of the Arbitration between **COMPANIA PORTORAFTI COMMERCIALE, S.A., as Owner of the M/V CAPTAIN GREGOS, Petitioner,**

and

**KAISER INTERNATIONAL CORPORATION, as Charterer, Respondent.**

**No. 85 Civ. 3920–CSH.**

United States District Court, S.D. New York.

June 28, 1985.

MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

These are cross-motions to compel arbitration and for related relief. Subject matter jurisdiction is founded upon the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

*Facts*

At the pertinent times petitioner Compania Portorafti Commerciale, S.A. owned the motor vessel CAPTAIN GREGOS. Petitioner chartered the vessel for a voyage to respondent Kaiser International Corporation. The written charter party was dated November 19, 1984. Clause 24 provided

---

for arbitration of disputes. It reads in pertinent part as follows:

"24. ARBITRATION. Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final. Either party hereto may call for such arbitration by service upon any officer of the other, whereever he may be found, of a written notice specifying the name and address of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration. If the other party shall not, by notice served upon an officer of the first moving party within twenty days of the service of such first notice, appoint its arbitrator to arbitrate the dispute or differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person with precisely the same force and effect as if said second arbitrator has been appointed by the other party...."

In the event of a party's failing to appoint its arbitrator within the 20-day period specified, so that the demanding party also appointed the second arbitrator, those two arbitrators select the third arbitrator to complete the arbitration panel.

The chartered voyage was completed in December, 1984. Petitioner asserts a claim for demurrage. Respondent disputes the claim and asserts a balance owing to it under the charter.

The parties' representatives engaged in a dialogue hoping to resolve the disputes. Certain of the pertinent communications appear in the motion papers. For example, on March 15, 1985 petitioner's representa-tive sent to Kaiser supporting documents on the demurrage claim and concluded on this relatively amicable note:

"On behalf of Owner, we would certainly appreciate your usual cooperation in placing this matter on the top of the pile since the amount involved is considerable."

Petitioner's representative sent a follow-up telex to Kaiser on March 20, still looking towards amicable resolution, but now suggesting that respondent remit $140,000 "as good will gesture with understanding that balance claimed will be processed within reasonable period of say 10 days."

Rather than making such a payment, respondent apparently asserted additional claims against petitioner. That provoked a telex to respondent on behalf of petitioner dated March 29 which read in pertinent part:

"PURSUANT TO PROVISIONS OF C/P CLAUSE 24 THIS TLX WILL SERVE AS OWNS FORMAL DEMAND TO COMMENCE IMMEDIATE ARBITRATION NEW YORK FOR ALL CLAIMS ASSERTED UNDER CHARTER INCLUDING CHTRS ALLEGED CARGO LOSS/CONTAMINATION CLAIMS AT CLOGHAN POINT/ST EUSTATIUS.

"OWNER HAS APPOINTED MR HAMMOND L CEDERHOLM, C/O JAMES W ELWELL AND CO INC, SUITE 1557, ONE WORLD TRADE CENTER, NEW YORK NY 10048 (TEL 212–432–0380) AS ARBITRATOR. OWNER DEMANDS THAT CHARTERER APPOINT ARBITRATOR WITHIN 20 DAYS FROM DATE OF THIS TLX."

This demand for arbitration required, under the provisions of Clause 24, that respondent name its arbitrator on or before April 18. However, it would appear that a dialogue looking towards settlement continued between the parties. In any event, on April 19, 1985 respondent's representative telexed to petitioner's representative:

"IN CONSIDERATION OF OWNERS EXTENDING THE DEADLINE FOR CHARTERERS TO APPOINT AN ARBITRATOR UNTIL MAY 9, 1985, IT IS

HEREBY AGREED AND UNDERSTOOD THAT KAISER WILL WIRE TRANSFER THE SUM OF $70,000 (SEVENTY–THOUSAND DOLLARS) ON MONDAY, APRIL 22, 1985 TO OWNERS' ACCOUNT. THIS TRANSFER IS CONSIDERED A GOOD FAITH PAYMENT WITHOUT PREJUDICE TO CHARTERERS' RIGHT TO DISPUTE OWNERS' CLAIM FOR BUNKERS/DEMURRAGE IN THE AMOUNT OF $153,749.24 (ONE HUNDRED FIFTY THREE THOUSAND, SEVEN HUNDRED FORTY–NINE DOLLARS AND TWENTY–FOUR CENTS) IN NEW YORK ARBITRATION. IF ALL OUTSTANDING CLAIMS ARE NOT AMICABLY SETTLED BY MAY 9, 1985, CHARTERERS WILL IMMEDIATELY UNDERTAKE TO APPOINT AN ARBITRATOR [sic], FAILING WHICH OWNERS MAY EXERCISE THEIR RIGHT UNDER THE CHARTER PARTY."

Because respondent's officer in charge of the matter was out of town at the time, respondent failed to appoint its arbitrator on May 9. On May 10 petitioner, invoking the quoted provision of the arbitration clause, appointed Mr. Lloyd C. Nelson as the second arbitrator. Mr. Cederholm, the arbitrator originally appointed by petitioner, and Mr. Nelson have selected Mr. Herbert Sondheim as the third arbitrator.

May 10, 1985 was a Friday. On the next business day, Monday, May 13, respondent's New York counsel advised petitioner's counsel that respondent appointed Mr. Jack Berg as respondent's arbitrator. Respondent suggested that petitioner agree to the withdrawal of Mr. Nelson as the second arbitrator, and the appointment of a third arbitrator by Mr. Cederholm and Mr. Berg. Petitioner declined the suggestion, and now petitions for an order directing that arbitration go forward before the Cederholm/Nelson/Sondheim panel. Respondent cross-petitions for an order compelling arbitration before a panel comprised of Messrs. Cederholm, Berg, and a third arbitrator to be selected by them; and for an order enjoining proceedings before the Cederholm/Nelson/Sondheim panel.

Respondent also suggests the possible necessity of an evidentiary hearing under § 4 of the Act. In the view I take of the case, no hearing is necessary. For the reasons which follow, petitioner's petition is denied and respondent's cross-petition is granted.

*Discussion*

The worst that can be said of respondent is that it sought to appoint its arbitrator, Mr. Berg, three calendar days and one business day after the May 9 deadline contained in the supplemental agreement of the parties evidenced by the telex of April 19. It further appears that the failure to make a timely appointment was inadvertent, and not for the purpose of delay or harassment. Respondent says that this is so, and there is no evidence upon which I could base a contrary inference.

There is substantial authority for the proposition that so minor a delay, uncomplicated by indications of bad faith, does not in equity deprive a party to an arbitration clause of its contracted-for right to appoint an arbitrator of its choosing. *Texas Eastern Transmission Corp. v. R.L. Barnard,* 285 F.2d 536 (6th Cir.1960); *Lobo & Co. v. Plymouth Navigation Co. of Monrovia,* 187 F.Supp. 859 (S.D.N.Y.1960); *In re Utility Oil Corp.,* 10 F.Supp. 678 (S.D.N.Y. 1934). These cases hold that minimal delays in appointing an arbitrator do not deprive the defaulting party of its right of appointment unless the contract makes time of the essence. The simple recitation of the time within which the appointment must be made is not sufficient, under these cases, to achieve that characterization.

Where a party couples its failure to make a timely appointment with dilatory litigation involving "charges so futile that they may reasonably appear to the court only a device for getting delay," *Orion Shipping & Trading Co., Inc. v. Eastern States Petroleum Corporation of Panama, S.A.,* 284 F.2d 419, 421 (2d Cir.1960), the appointive right may be lost. This is the sole case relied upon by petitioner in the case at bar. But it is not apposite on the facts.

The case closest on the facts is *Lobo & Co., supra,* not cited by either party. The arbitration clause was the same. A demurrage claim arose in respect of a chartered vessel. The owner sent charterer a letter demanding arbitration and appointing its arbitrator. However, settlement discussions continued, and before the charterer's time for appointing its arbitrator had elapsed, charterer sent to the shipowner a letter dated July 13, 1960 which read as follows:

"This is to confirm our telephone conversation of the other day whereby it was mutually agreed to suspend for two weeks arbitration proceedings in connection with a dispute arising from subject Charter Party while we are investigating the matter."

187 F.Supp. at 859–60.

Of this letter, Judge Dawson said for this Court:

"As has been pointed out, if there had been no extension of time petitioner would have had to appoint its arbitrator within twenty days after June 23, 1960. However, admittedly there was an extension of time. The extension is susceptible of two constructions; one construction would be that the extension was an extension of time for the appointment of an arbitrator; the other would be that it was an extension of time until July 27th of all matters in the arbitration proceedings, thereby giving petitioner twenty days from July 27th to appoint an arbitrator."

*Id.* at 860.

Charterer appointed its arbitrator on July 28, 1960. The shipowner rejected the appointment as untimely under the arbitration clause, and undertook to appoint a second arbitrator. Charterer filed a petition to compel arbitration before a panel which included its appointee. Judge Dawson, relying upon this Court's prior opinion in *In re Utility Oil Corp., supra,* granted the petition. He stated:

"It was admitted on the argument of the motion that if there was any delay in petitioner's naming its arbitrator, it was a delay of 24 hours, and that the most that can be claimed is that petitioner's arbitrator should have been named on July 27th instead of July 28th. However, even this argument is open to question, because there is some doubt as to the terms of the extension agreement, i.e., whether the extension was one for the appointment of an arbitrator or the proceedings of arbitration. If it was the latter, petitioner was within its rights in appointing an arbitrator on July 28th. "Arbitration agreements are aimed at amicable determination of disputes with results which both parties will be willing to accept. Toward this end, it is desirable that the arbitration panel consist of arbitrators chosen by each of the parties. Where imbalance is unnecessarily effected the purpose and advantages of arbitration are defeated. To this end, and so far as possible, the panel should be one mutually acceptable. This determination should be made in advance to preclude subsequent useless and unnecessary litigation. Where a delay of one day in the appointment of an arbitrator has occurred in the case of parties who are in continual communication, such a delay is an immaterial variation of the terms of the contract and should not be permitted to upset the basic and original intent of the arbitration plan."

*Id.* at 860–61.

I am in entire agreement with this rationale, and reach the same conclusion in the case at bar.

I appreciate that the agreement extending time in the case at bar (telex of April 19, 1985, quoted *supra*) is perhaps not susceptible of the differing constructions of the extension agreement before Judge Dawson in *Lobo & Co.* But the judge did not base his decision upon that distinction; his analysis makes it clear that, even assuming a one-day delay in appointing the charterer's arbitrator, that failure did not in law or in equity rise to the level of depriving the charterer of its right to appoint an arbitrator.

I have also considered whether the telex of April 19, 1985 should be regarded as a mutual expression that the extended time of appointment of an arbitrator was of the essence of the contract. I do not consider that it should be so regarded, so as to deprive the present respondent of a traditionally recognized right. Unquestionably, the telex, while embodying an extention of the time within which respondent should appoint its arbitrator, specified a new date for appointment. However, under the cited cases, the printed charter party clause is insufficient to make time of the essence, and I reach the same conclusion with respect to the extension agreement, which seems to me indistinguishable in that regard from the agreement Judge Dawson considered in *Lobo & Co.*

### Conclusion

For the foregoing reasons, petitioner's petition to compel arbitration is denied and respondent's cross-petition to compel arbitration is granted.[1]

Arbitration of the disputes arising out of the charter party before the panel comprised of Messrs. Cederholm, Nelson and Sondheim is permanently enjoined.

The Court is confident that Messrs. Cederholm and Berg will attend promptly to the selection of a third arbitrator, so that the panel may be completed and the disputes resolved.

This Court retains jurisdiction over any subsequent applications in the case that may arise.

In the interim, the Clerk of the Court is directed to place the case on the Suspense Calendar.

It is SO ORDERED.

---

**1.** I prefer not to dignify in text respondent's collateral argument that Mr. Nelson should not be regarded as a "disinterested person," within the meaning of Clause 24 of the charter party, because he is a "shipowner's man" and petitioner's counsel frequently represent Mr. Nelson's corporate employer. I construe "disinterested person" to mean an arbitrator free of such relationships or conflicts of interest which would disqualify him from acting as an arbitrator. Clearly Mr. Nelson suffers from no such impediments. *Cf. International Produce, Inc. v. A/S Rösshavet*, 638 F.2d 548 (2d Cir.), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981). Mr. Nelson is, and for more years than he probably cares to acknowledge has been, a leading maritime arbitrator of this City. Had respondent forfeited the power to appoint its own arbitrator, there would be no basis in fact or in law to attack the propriety of petitioner's appointment of Mr. Nelson as the second arbitrator. I append this footnote to make it crystal clear that the ground for decision is my conclusion that, on the facts of this case, respondent was entitled to appoint Mr. Berg at the time it did so.