**NEW ENGLAND REINSURANCE CORPORATION, Plaintiff,**

v.

**TENNESSEE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 91–11653–C.**

United States District Court, D. Massachusetts.

Nov. 9, 1991.

Alan G. Miller, Mitchell S. King, Sherri Rozansky, Morrison, Mahoney & Miller, Boston, Mass., for plaintiff.

Wesley S. Chused, Kroll & Tract, Boston, Mass., for defendant.

## ORDER

CAFFREY, District Judge.

The Court adopts the recommendation of Magistrate Bowler.

REPORT AND RECOMMENDATION RE: ARBITRATION BETWEEN NEW ENGLAND REINSURANCE CORPORATION AND TENNESSEE INSURANCE CORPORATION (DOCKET ENTRIES ## 1 & 4)

(October 15, 1991)

MARIANNE B. BOWLER, United States Magistrate Judge.

## INTRODUCTION

This case is before the court on plaintiff New England Reinsurance Corporation's Application to Compel Arbitration ("the application") and on defendant Tennessee Insurance Company's Cross Motion to Compel Arbitration and Confirm Party Arbitrator (Docket Entries ## 1 & 4), both brought pursuant to section four of the United States Arbitration Act, 9 U.S.C. §§ 1–11. ("the Act").[1] Both New England Reinsurance Corporation ("the plaintiff") and Tennessee Insurance Company ("the defendant") seek to enforce an arbitration clause contained in a reinsurance contract, "The International Account Retrocession Program/Quota Share Agreement" ("the agreement"). The agreement required the plaintiff to cede a percentage of the premiums for certain of its insurance policies to the defendant's predecessor in interest, the Blue Water Insurance Company, in exchange for which Blue Water Insurance indemnified a certain percentage of the plaintiff's losses on those policies.

The agreement was in force from January 1, 1979 until December 31, 1981. The defendant ceased making payments under the agreement in 1988 when the plaintiff allegedly refused the defendant access to the plaintiff's books and records, as provided for in the agreement. (Docket Entry # 15, ¶¶ 5, 6). Both parties now seek to resolve this dispute through an arbitration

1. Section four reads, in part:

A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

process set forth in an arbitration clause in the agreement.[2]

## BACKGROUND

On April 3, 1991, in accordance with the arbitration clause, the defendant served upon the plaintiff a written demand to arbitrate the dispute regarding the overdue payments and the access to the plaintiff's books. The arbitration clause required the plaintiff to nominate an arbitrator within 30 days of receiving the arbitration demand, in this case by May 3, 1991. On April 10, 1991, the defendant appointed George Zacharkow as its arbitrator, and notified the plaintiff thereof. On or about April 29, 1991, the plaintiff purportedly appointed Milo Zubrigen as its arbitrator, but failed to notify the defendant of its appointment. (Docket Entry # 6, ¶ 9).

On June 5, 1991, because of the plaintiff's failure to appoint an arbitrator within the allowed 30 days, the defendant informed the plaintiff that it had appointed Michael S. Barranco to act as the plaintiff's arbitrator. On June 11, 1991, the plaintiff informed the defendant of Zubrigen's appointment and rejected Barranco as unqualified by the terms of the arbitration clause to serve as an arbitrator.

From this exchange emerges the ensuing application and cross motion to compel arbitration. The plaintiff argues that its short, non-prejudicial delay does not prevent it from appointing its own arbitrator because the contract did not make time of the essence, and because of an underlying policy favoring arbitration before mutually acceptable panels. Alternatively, the plaintiff argues that the defendant forfeited its right to appoint the second arbitrator by its choice of Barranco, an allegedly unqualified and prejudiced candidate.[3] The plaintiff moves this court, pursuant to 9 U.S.C. § 4, to compel arbitration in front of a panel composed of Zacharkow, Zubrigen, and a third arbitrator chosen by them.

The defendant argues that the Act requires this court to enforce arbitration clauses strictly by their terms, and allows no discretion to permit Zubrigen's untimely appointment. Alternatively, the defendant argues that the pleading filed by the plaintiff ("the application") is improper and does not conform to the Federal Rules of Civil Procedure, and that service was deficient. The defendant moves, also pursuant to 9 U.S.C. § 4, to compel arbitration before a board composed of Zacharkow, Barranco, and a third arbitrator chosen by them.

## ANALYSIS

### I. THE PLAINTIFF MAY APPOINT ITS ARBITRATOR

■ Though both parties plead alternative issues, the fundamental question facing this court is whether the plaintiff has forfeited its right to appoint one of the three arbitrators by its failure to name its candidate within the time specified by the arbitration clause. This is a case of first

2. The arbitration clause reads as follows:
   If any dispute or difference of opinion should arise with reference to the interpretation of this Agreement or the rights with respect to any transaction at all involved, the dispute shall be referred to three arbitrators, who shall be active or retired executive officers of insurance or reinsurance companies domiciled in the U.S.A., one to be chosen by NERCO, one to be chosen by the retrocessionaire and the third by the two so chosen within 30 days of their appointment. If either party refuses or neglects to appoint an arbitrator within 30 days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators, who shall chose [sic] the third. If the two arbitrators so chosen fail to agree on the selection of a third, each shall name two, of whom the other shall decline one, and the decision will be made by drawing lots. (Docket Entry # 15, ¶ 4)

3. The plaintiff alleges that Barranco has never served as an executive officer of a domestic insurance company, a qualification required by the arbitration clause. The plaintiff also alleges that Barranco is prejudiced by his desire to develop a business relationship with the plaintiff. The plaintiff cites as support a letter to the plaintiff's counsel, dated June 13, 1991, in which Barranco stated, "I will make no charge for my services on NERCO's behalf. When the arbitration is complete, if you and NERCO are less than absolutely satisfied with the caliber of my performance as NERCO's arbitrator in this matter, NERCO will owe me nothing." (Docket Entry # 8, ex.B).

impression in this circuit, and the appellate law is conflicting.

In an action under section four of the Act, the only questions before the court are (1) whether an arbitration clause exists, and (2) whether the parties have complied therewith. 9 U.S.C. § 4. If the court determines that no question exists as to these two issues, it may proceed to compel arbitration in accordance with the parties' agreement.[4] As neither party disputes the existence of the arbitration clause, the sole question raised by the pleadings is compliance with its terms.

Defendant argues as follows. Section four of the Act requires that, upon determining that the pleadings raise no triable issues, the court shall direct the parties to "proceed to arbitration *in accordance with the terms of the agreement.*" 9 U.S.C. § 4 (emphasis added). The defendant contends that this language requires the court to construe literally the terms of arbitration clauses, regardless of normal rules of contract interpretation.

Defendant relies upon *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), in which the Supreme Court held that the Act required courts to "rigorously enforce agreements to arbitrate." Defendant urges that strict enforcement and strict construction are one and the same.

The underlying facts of *Dean Witter* belie defendant's theory.[5] *Dean Witter* and its progeny[6] clearly address *only the choice to arbitrate or litigate,* and not the rules of construction applicable to arbitration clauses. In ordering strict enforcement, the *Dean Witter* Court ruled that those promising to arbitrate claims may not in the future evade that promise and litigate those claims by appealing to a court's discretionary powers. Only by taking the Court's words out of context may one reach defendant's conclusion.

While other courts have done just that, most notably in *Evanston Insurance Company v. Global Reinsurance Corporation,* 1990 WL 141442 (N.D.Ill)[7], the First Circuit Court of Appeals has declined to apply *Dean Witter* as defendant requests. In *New England Energy v. Keystone Shipping* the court refused to adopt the strict construction argument, stating that "... neither the Act nor Supreme Court precedent mandates such a narrowly circumscribed role for the courts." 855 F.2d 1, 6–7 (1st Cir.1988), *cert. denied,* 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989).

Though *New England Energy* dealt only with consolidation[8] and not appointment,

4. Section four reads, in relevant part,
   The court shall hear the parties and upon being satisfied that the making of the agreement for the arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement..... If the making of the arbitration agreement or the failure, neglect or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

5. In *Dean Witter,* the petitioner moved to compel arbitration of state law claims pendant to federal securities claims for which it had waived arbitration. The district court refused to sever and order arbitration of the arbitrable claims. The Court reversed, holding that "the act leaves no place for the exercise of discretion ... but instead mandates that courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.,* at 218, 105 S.Ct., at 1241.

6. *Evanston Insurance v. Gerling Global Reinsurance,* 1990 WL 141442 (N.D.Ill), the only case cited by the defendant which is directly on point, specifically cites *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), in which the Supreme Court relied on *Dean Witter* to hold that claims brought pursuant to section 10b of the 1934 securities act are arbitrable. *Shearson,* as does *Dean Witter,* involves only the issue of arbitrability of claims.

7. *Evanston Insurance* relied upon *Dean Witter* to require strict adherence to timeliness requirements for appointing arbitrators in arbitration clauses. Both *Weyerhaeuser Co. v. Western Seas Shipping Co.,* 743 F.2d 635, 637 (9th Cir.1984) and *Ore & Chemical Corporation v. Stinnes Interoil, Inc.,* 606 F.Supp. 1510, (S.D.N.Y.1985) hold that a court strictly enforcing an arbitration clause may not consolidate arbitration proceedings if the clause is silent upon arbitration.

8. In *New England Energy,* the First Circuit Court of Appeals explicitly rejected *Weyerhaeuser,* holding that federal courts may order consolidation of arbitration claims in accordance

its clear import is to limit *Dean Witter* to its facts. Insofar as *Evanston Insurance* relies upon *Dean Witter* to hold that the timeliness requirements within arbitration clauses must be strictly enforced, this court declines to follow it. This court finds the authority cited by the plaintiff more relevant and in closer harmony with the First Circuit's posture in *New England Energy*.

The plaintiff supports its position with a series of cases holding that the importance of a properly composed board of arbitrators outweighs the importance of adherence to the strict terms of the arbitration clause, unless the clause explicitly makes time of the essence. In *Compania Portorafti Commerciale v. Kaiser International*, 616 F.Supp. 236, 238 (S.D.N.Y.1985), the court construed an arbitration clause almost identical to that in the agreement. Under circumstances similar to those at hand, the court refused to compel the defendant to proceed with an arbitrator appointed by the plaintiff, holding that:

> ... so minor a delay, uncomplicated by indications of bad faith, does not in equity deprive a party to an arbitration clause of its contracted for right to appoint an arbitrator of its choosing. (citations omitted).... unless the contract makes time of the essence. The simple recitation of the time within which the appointment must be made is not sufficient ... to achieve that characterization. *Compania Portorafti*, 616 F.Supp. at 239.

*See also In re Utility Oil Co.*, 10 F.Supp. 678, 680–81 (S.D.N.Y.1934) (Action under section four is an action for specific performance, in which time is not of the essence unless parties have made it so.)

The *Compania Portorafti* court explained that "arbitration agreements are aimed at amicable determination of disputes with results which both parties will be willing to accept." *Compania Portorafti*, 616 F.Supp. at 239 (citing *Lobo & Co. v. Plymouth Navigation of Monrovia*, 187 F.Supp. 859, 860–61 (S.D.N.Y.1960)). To further what it considered the "purposes and advantages" of arbitration, the court held that "so far as possible, the panel should be one mutually acceptable." *Id.*[9]

This court hereby adopts the compelling reasoning employed by the district court in *Compania Portorafti*, and the authority cited therein. Counsel for the plaintiff has stated in an affidavit that the eight day (six business day) delay in appointing the plaintiff's arbitrator was not due to bad faith. The plaintiff's counsel's lack of diligence in transmitting his letter of appointment does not rise to a level sufficient to deprive the plaintiff of its right to appoint an arbitrator, especially considering the lack of prejudice to the defendant.[10] A second, unrelated contract arbitration pending between the two parties did not proceed from appointment to hearing and, considering the posture of the parties, this action will probably proceed just as slowly. (See Docket Entry # 6, ¶ 6.) Moreover, nothing indicates that the parties intended time to be of the essence[11]. Insofar as the author-

---

with underlying state law where the arbitration clause is silent on the issue. The court construed the strict construction argument as a preemption argument. *Id.*

**9.** The defendant attempts to factually distinguish these cases by placing great importance on the fact that in both *Compania Portorafti* and *Lobo*, the parties first extended the deadline for appointing the second arbitrator pending attempts at settlement. The extended deadline was then missed. The defendant argues that the courts "placed reliance upon this factor" when ruling as they did. (Docket Entry # 9) This court disagrees with the defendant's reading of these cases. In fact, the *Compania Portorafti* court specifically rejected the notion that the holding in *Lobo* was based in any way on the confusion surrounding the deadline. *Id.*, at 239.

**10.** The defendant contends that it has been prejudiced by expenses incurred due to plaintiff's refusal to settle the underlying dispute outside of the arbitration process. (See Docket Entry # 14, p. 12). Such prejudice, if it exists, bears no relevance to the issue of whether the plaintiff's eight day delay in appointing its arbitrator prejudiced the defendant's ability to protect its rights under the agreement through the arbitration process.

**11.** *See Also Trade Arbed, Inc. v. S/S Ellispontos*, 482 F.Supp. 991, 999 (S.D.Tx.1980), in which the court held that where nothing indicated that time was of the essence and where third party complaint was served after expiration of time period allowed by the contract for arbitration demands, the third party defendant was granted

ity cited by the defendant is relevant to the facts, this court declines to follow it.[12]

## II. SERVICE WAS PROPERLY EXECUTED

■ Defendant also moves this court to dismiss the application due to insufficient service, arguing that its counsel in the arbitration, Kroll and Tract, was not authorized to accept service of the application. Rule 4(d)(3), Fed.R.Civ.P. provides that service may be made on "... any other agent (of a foreign corporation) authorized by appointment to receive service of process." An attorney is not deemed an agent so appointed absent a factual basis for such a belief. 4 A. Wright and C. Miller, *Federal Practice and Procedure*, § 1097 at 86–7 (2d ed. 1987). "The requisite intent, however, may be implied by the ... broad circumstances surrounding the service upon the agent." *Id.; see also United States v. Bosurgi*, 343 F.Supp. 815, 818 (S.D.N.Y.1972) (Such agency must be implied from all the circumstances ... which indicate the extent of the authority the client intended to confer).

In this instance, the defendant retained Kroll and Tract to pursue its rights under the agreement by means of the arbitration clause. Kroll and Tract issued the demand to arbitrate, and sent the notices of appointment of Zacharkow and Barranco. Kroll and Tract performed the same function in respect to a second, unrelated contract arbitration between the parties. This court therefore holds that such circumstances imply the authority to accept service for an action to compel adherence to the arbitration clause.

stay of third party action pending arbitration pursuant to 9 U.S.C. § 3, even though deadline for demanding arbitration had long since passed.

12. Overall, defendant places entirely too much emphasis upon *Dean Witter*'s wording, and too little upon its factual underpinnings. Note that cases reaching the same basic conclusion, that the Act favors arbitration over litigation, but which state this holding in a manner favorable to the plaintiff, ("the federal rule is to construe arbitration clauses *liberally* (emphasis added), ... and to resolve doubts in favor of arbitra-

## III. PLAINTIFF'S APPLICATION IS SUFFICIENT IN FORM

■ The defendant also moves to dismiss the application for failure to state a claim for which relief may be granted. Defendant argues that plaintiff filed no *complaint*, and that the application is insufficient to state a claim.

Section four of the Act states:

a party aggrieved by the alleged failure to arbitrate under a written agreement for arbitration ... may petition (the) United States District Court ... for an order directing that such arbitration proceed. Five days notice in writing of such *application* (emphasis added) shall be served upon the party in default. 9 U.S.C. § 4.

The act makes no mention of the need to file a complaint. Moreover, all the cases cited in both plaintiff's and defendant's pleadings treat pleadings under section four of the Act as motions, not complaints for relief. The defendant's argument that plaintiff's action should be dismissed because it is entitled "Application" and not "Motion" or "Petition" is, therefore, not meritorious.

## IV. AFFIRMATIVE DEFENSES NOT MERITORIOUS

The defendant raised in its answer, but did not brief, ten (10) affirmative defenses. Having summarily reviewed these defenses, this court determines that they are without merit.

## CONCLUSION

This court, therefore, RECOMMENDS [13] that the Plaintiffs' Application To Compel

tion") have never been overruled. *Janmort Leasing Inc. v. Econo–Car International*, 475 F.Supp. 1282, 1291 (E.D.N.Y.1979).

13. Any objection to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation and must identify that portion of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to

Arbitration (Docket Entry # 1) be AL-LOWED. This court further RECOM-MENDS that the defendant be ORDERED to submit to arbitration before a panel consisting of Zacharkow, Zurbrigen, and a third arbitrator chosen by the process set forth in the agreement. This court finally RECOMMENDS that the defendants Cross Motion to Compel Arbitration and Confirm Party Arbitrator (Docket Entry # 4) be DE-NIED.

appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–7 (1st Cir. 1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).