**UNIVERSAL REINSURANCE CORPORATION, Plaintiff–Appellee,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellant.**

No. 92–1559.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1992.

Decided June 4, 1993.

Rehearing Granted July 29, 1993.

Decided on Rehearing Feb. 9, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied March 16, 1994.

Robert N. Hermes, Stephanie Leider, Butler, Rubin, Saltarelli & Boyd, Chicago, IL, for plaintiff-appellee.

Jeffrey P. Lennard, Sonnenschein, Nath & Rosenthal, Chicago, IL, for defendant-appellant.

Before CUDAHY, ESCHBACH, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Allstate Insurance Company ("Allstate") appeals from an order confirming the appointment of an arbitrator chosen by Universal Reinsurance Corporation ("Universal") over Allstate's objection. Allstate contends that Universal lost the right to name an arbitrator when it tendered its selection three business days beyond the time permitted by the arbitration provisions of their reinsurance agreement. The district court concluded that Universal should be permitted its belated choice of an arbitrator, reasoning that "[t]he only sensible way to effectuate what must be presumed to have been the mutual intention of the parties to submit their dispute to an impartial arbitration panel is to ignore inconsequential and immaterial breaches of the procedural requirements of the arbitration agreement." Feb. 5, 1992 Tr. ("Tr.") at 7. We have jurisdiction to hear Allstate's appeal pursuant to 9 U.S.C. § 16(a)(3), which authorizes review of "a final decision with respect to an arbitration...." Although we initially affirmed, we granted Allstate's petition for rehearing, 995 F.2d 116, and now reverse.

## I. BACKGROUND

The reinsurance agreement between Allstate and Universal provides for the arbitration of disputes arising out of the contract:

If any dispute arises between [the parties] with reference to the interpretation, performance, or breach of this Agreement (whether the dispute arises before or after termination of this Agreement) such dispute, upon the written request of either party, will be submitted to three arbitrators, one to be chosen by each party and

the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after receipt of written notice from the other party requesting it to do so, the requesting party may appoint both arbitrators.

R. 1, Ex. A at 11.

A dispute arose between Universal and Allstate regarding certain paid losses for which Universal was purportedly obliged to reimburse Allstate. By letter dated December 16, 1991, Allstate demanded arbitration of the dispute. The letter stated:

> [P]ursuant to the arbitration clause in the ... agreement, Allstate demands that Universal ... name its arbitrator within 30 days, that is, on or before January 16, 1992. Due to the time elapsed since payment has been due to Allstate in this matter, please be advised that Allstate ... will agree to no extensions of time, and that Allstate intends to strictly subscribe to the terms and conditions of the ... agreement.

R. 1, Ex. B. Universal received the letter on December 17, 1991. Universal's Secretary and General Counsel, Robert W. Jones, recorded the January 16 deadline for naming the company's arbitrator on an internal control sheet. However, a secretary inadvertently mistyped the date when transcribing it. As a result of that error, Universal failed to name its arbitrator by January 16, 1992.

On January 20, 1992, Allstate exercised its contractual prerogative to appoint an arbitrator on Universal's behalf and notified Universal by letter that it had chosen Robert G. Pellatiro. Universal received the letter on January 21, 1992 and immediately responded with a letter naming William McIllwain as its arbitrator and requesting that Allstate accept the belated appointment in the interest of equity. Allstate refused, prompting Universal to file suit in the district court seeking confirmation of McIllwain as Universal's arbitrator. *See* 9 U.S.C. § 4. Allstate counterclaimed, requesting confirmation of Pellatiro.

The district court granted Universal's petition to confirm McIllwain and denied Allstate's counterclaim in an oral ruling. Although the court acknowledged that the parties' decision to arbitrate their disputes is one that is "strictly enforced" (Tr. at 6), the court reasoned that "[t]he details of the arbitration proceeding are far less important, and rigorous enforcement, according to the letter of the arbitration agreement, is not necessarily required in order to carry out the intent of the parties" (*id.* at 6–7). Emphasizing that the intent of the parties was to submit their differences to an impartial panel of arbitrators, the court concluded that it would undermine this intent to deny Universal the opportunity to name its own arbitrator due to "an understandable and regrettable oversight" that had caused no prejudice to Allstate (*id.* at 6):

> No one in his right mind would agree to have a matter decided by umpires selected entirely by one's adversary. The whole idea of this kind of arbitration is that each side will appoint an arbitrator, and those two will appoint a third who will presumably be neutral, so that the arbitration panel, although partially appointed by partisans, will by virtue of the third arbitrator, if nothing else, have the leavening influence of an impartial person.
>
> \* \* \* \* \* \*
>
> ... [I]f Allstate were allowed to name all of the arbitrators, which would be the result here since they would name the arbitrators who would name the additional arbitrator, the intention of the parties to have their dispute resolved by an impartial arbitration panel would be wholly frustrated. The only sensible way to effectuate what must be presumed to have been the mutual intention of the parties to submit their dispute to an impartial panel is to ignore inconsequential and immaterial breaches of the procedural requirements of the arbitration agreement.

*Id.* at 5–7. We acknowledge that the learned district judge's ruling has persuasive force and finds support in the case law. *See Texas Eastern Transmission Corp. v. Barnard,* 285 F.2d 536, 540 (6th Cir.1960); *New England Reins. Corp. v. Tennessee Ins. Co.,* 780 F.Supp. 73, 76–78 (D.Mass.1991); *Compania Portorafti Commerciale, S.A. v. Kaiser Int'l Corp.,* 616 F.Supp. 236, 239 (S.D.N.Y.1985); *Lobo & Co. v. Plymouth Navigation Co. of*

*Monrovia,* 187 F.Supp. 859, 860–61 (S.D.N.Y. 1960); *In re Utility Oil Corp.,* 10 F.Supp. 678, 681 (S.D.N.Y.1934). *Contra Evanston Ins. Co. v. Gerling Global Reinsurance Corp.,* No. 90 C. 3919, 1990 WL 141442, at *2–3, 1990 U.S.Dist. LEXIS 12521, at *6–7 (N.D.Ill. Sept. 21, 1990). Nonetheless, we are constrained by the terms of the parties' agreement and the Federal Arbitration Act to reach a different result.

## II. ANALYSIS

■ The sole question before us is whether the agreement between Universal and Allstate should be enforced according to its express terms. There is no dispute that Universal failed to appoint McIllwain within the thirty days permitted by the contract; nor is there any dispute that if that failure constitutes "refusal or neglect" to name an arbitrator, the contract entitles Allstate to name an arbitrator on Universal's behalf. Universal has suggested that because its delay was due simply to a clerical error, it did not commit the kind of "inexcusable" mistake that constitutes neglect; in a like vein, the district court emphasized that Universal was not guilty of "bad faith or even gross negligence." (Tr. at 5.) But the contract does not purport to differentiate among degrees of negligence. It uses the term "neglect" without limitation, embracing excusable as well as culpable omissions. *See Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness"); *Black's Law Dictionary* 1032 (6th ed. 1990). However inadvertent Universal's failure to record and to meet the deadline for naming its arbitrator may have been, it amounted to neglect nonetheless. Thus, unless there is some reason to deviate from the specific provisions of the contract, Allstate is entitled to have Pellatiro confirmed as Universal's arbitrator. *See* 9 U.S.C. § 2 (written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

■ Characterizing its delay as a breach of contract, Universal argues that the breach was immaterial and "should not deprive Universal of its bargained-for right to arbitrate before a bipartisan panel." Universal Br. at 7–8. There was no breach here, however. Universal did not promise to name an arbitrator within thirty days, as if that promise were consideration for Allstate's agreement to arbitrate. Instead, the contract simply allowed Universal thirty days to pick its arbitrator and provided that after that time, Allstate could make the choice on Universal's behalf. In this context, Universal's delay was not a breach, but a contingency that the parties anticipated and provided for; consequently, we need not consider whether the delay was material. Materiality is, in any event, relevant only to the extent that Allstate seeks to avoid its obligations under the agreement. *See, e.g., Sahadi v. Continental Illinois Nat'l Bank & Trust Co. of Chicago,* 706 F.2d 193, 196 (7th Cir.1983). Allstate is not attempting to evade its duty to arbitrate; it is simply asking to proceed in exactly the manner the parties themselves specified in their agreement.

■ The Supreme Court has made clear that when the parties have chosen to submit their disputes to arbitration, we must respect that choice:

> Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate.

*Southland Corp. v. Keating,* 465 U.S. 1, 7, 104 S.Ct. 852, 856, 79 L.Ed.2d 1 (1984); *see also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985). On its face, of course, this case involves the procedural details of arbitration rather than the duty to arbitrate. Seizing on that distinction, the district court opined that "[t]he details of the arbitration proceeding are far less important, and rigorous enforcement, according to the letter of the arbitration agreement, is not necessarily required in order to carry out the intent of the parties." Tr. at 6–7. *Accord New Eng-*

*land Reins. Corp.*, 780 F.Supp. at 76–77. We agree with this proposition insofar as it focuses on the parties' intent. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). But as with any other contract, the written arbitration agreement itself is the best evidence of what the parties intended. *See Morin Bldg. Prods. Co. v. Baystone Constr., Inc.*, 717 F.2d 413, 416 (7th Cir.1983). In this case the agreement is crystal clear, specifying a particular course for the appointment of a second arbitrator when one of the parties fails to make its selection within thirty days. This provision does not command less deference simply because it concerns a procedural rather than a substantive aspect of the parties' decision to arbitrate. On the contrary, the Arbitration Act states in no uncertain terms that contractual provisions for the appointment of an arbitrator "*shall* be followed." 9 U.S.C. § 5 (emphasis supplied). *See Bear Stearns & Co. v. N.H. Karol & Assocs., Ltd.*, 728 F.Supp. 499, 502 (N.D.Ill.1989) (following *McMahon v. Shearson/American Express, Inc.*, 709 F.Supp. 369, 373 (S.D.N.Y.1989), *rev'd in part on other grounds*, 896 F.2d 17 (2d Cir.1990)).

■ By honoring the letter of the contract, we remain true to the Arbitration Act as well as the parties' intent. The purpose of the Act was to end a tradition of judicial hostility toward arbitration agreements and place them on a par with other contracts (*Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989); *Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 645 (7th Cir.1981)), thereby fostering the parties' efforts to resolve their disputes more quickly and economically outside of the courthouse (*Moses H. Cone Memorial*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967)). In that spirit, Universal and Allstate adopted a provision designed to ensure prompt selection of an arbitration panel and, in turn, timely resolution of their dispute.[1] We concede that strict enforcement of this provision may sap Universal's faith in the impartiality of the panel.[2] Nonetheless, with due respect to the district judge, we think it inaccurate to suggest that "[n]o one in his right mind would agree to have a matter decided by umpires selected entirely by one's adversary." Tr. at 5. That is *exactly* what Universal agreed to when it signed off on the language permitting Allstate to select a second arbitrator if Universal failed to do so within thirty days. Universal does not suggest that this proviso was the product of anything but arm's-length negotiation. *See Mitsubishi Motors Corp.*, 473 U.S. at 627, 105 S.Ct. at 3354; *McMahon*, 709 F.Supp. at 373. Nor does it contend that enforcing the contract as written would produce a result that the parties themselves did not anticipate. As Universal conceded at oral argument, it is, like Allstate, a sophisticated party well versed in the language and ramifications of arbitration agreements.

It is tempting to relieve Universal of the consequences of its oversight. Its delay in naming an arbitrator was brief and inadvertent, and it caused no ostensible prejudice to Allstate. But the parties themselves have dictated the outcome in this situation, and absent compelling circumstances, it is not our province to rewrite their agreement. *Southland*, 465 U.S. at 7, 104 S.Ct. at 856–57 (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32

---

**1.** The agreement does not contain a "time is of the essence clause." *See Texas Eastern Transmission Corp.*, 285 F.2d at 539, 540; *New England Reins. Corp.*, 780 F.Supp. at 77. Yet, the fact that the parties included a default provision for the selection of a second arbitrator after thirty days suggests to us that the parties considered the prompt appointment of the arbitrators quite important. *Evanston Ins. Co.*, 1990 WL 141442, at *2–3, 1990 U.S.Dist. LEXIS 12521, at *7. Allstate's demand letter, warning Universal that it would not consent to any extensions of

time, confirms its own expectation that the arbitration would proceed posthaste.

**2.** We note, however, that each of the arbitrators is constrained by a duty of fairness, and Universal may seek to have any adverse award vacated on the basis of partiality. *See* 9 U.S.C. § 10(a). In addition, the contract provides that the arbitrators "will not have personal or financial interests in the result of the arbitration." R. 1, Ex. A at 11.

L.Ed.2d 513 (1972)). Allstate and Universal agreed to a mutually binding procedure that would eliminate needless skirmishes and delays in the selection of arbitrators. To substitute our own notion of fairness in place of the explicit terms of their agreement would deprive them of the benefit of their bargain just as surely as if we refused to enforce their decision to arbitrate. Indeed, by permitting parties to evade the arbitration procedures to which they have consented, we lure them to the very expenditures of time and money in the courtroom that the Arbitration Act and their own agreement were intended to avoid.

The district court's judgment granting Universal's petition and denying Allstate's counterclaim is therefore

REVERSED.

CUDAHY, Circuit Judge, with whom ESCHBACH, Circuit Judge, joins, concurring:

It is time to put this difficult-to-decide case behind us, and I think Judge Rovner's opinion does that with great skill. This is not to say, however, that I find Judge Grady's concerns in coming to the opposite conclusion less than weighty. I think I agree with Judge Grady that "[n]o one in his right mind would agree to have a matter decided by umpires selected entirely by one's adversary." Maj.Op. at 129. Applying this principle here seems to leave us with at least one delusional insurance company.

And we have yet to see what result will emerge from this lopsided arbitration. Perhaps, the award will be vulnerable on the basis of partiality as the majority suggests. Maj.Op. at 129, n. 2. Perhaps having all the arbitrators selected by one party renders the proceeding *per se* partial. How one is to determine in these circumstances whether the arbitrators have carried out their duty of fairness is something of a puzzle. *Id.* It is, however, clear that two sophisticated parties entered into this arrangement of their own accord, and this may be all that counts. Only time will tell.