NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 4 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PUBLIC RISK INNOVATIONS,
SOLUTIONS, AND MANAGEMENT,

Petitioner-Appellee,

v.

AMTRUST FINANCIAL SERVICES, INC.;
WESCO INSURANCE COMPANY,

Respondents-Appellants.

No. 21-16315

D.C. No. 3:21-cv-03573-EMC

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted April 13, 2022
San Francisco, California

Before: BYBEE and R. NELSON, Circuit Judges, and RAKOFF,[**] District Judge.

This appeal stems from an arbitration dispute between Public Risk

Innovations, Solutions, and Management ("PRISM") and AmTrust Financial

Services ("AmTrust"). PRISM filed suit in the district court to compel AmTrust to

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

arbitrate with PRISM's chosen arbitrator, Mr. Conley. AmTrust cross-moved to compel PRISM to arbitrate with a second arbitrator chosen by AmTrust.

The district court had diversity jurisdiction over this matter under 28 U.S.C. § 1332. We have jurisdiction under 9 U.S.C. § 16(a)(3).

The district court's interpretation of a contract and the meanings of its provisions are questions of law subject to *de novo* review. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1021 (9th Cir. 2016). We affirm the district court's holdings that self-insurance, risk-sharing pools are insurance companies within the meaning of the contract and that PRISM did not fail to nominate an arbitrator.

1. PRISM readily concedes that it is not technically an insurer but argues that it is an insurance company within the meaning of the contract. In interpreting the contract under California law, we try to discover the intent of the parties by looking only to the contract's text, if possible. *AIU Ins. Co. v. Superior Ct.*, 799 P.2d 1253, 1264 (Cal. 1990). Here, the contract's text shows that the parties intended risk-sharing pools like PRISM to be considered "insurance companies" under the contract. First, the contract refers to the coverage that PRISM provides as "polic[ies]" and "insurance contract(s)." Though PRISM does not actually provide policies, and instead provides memoranda of coverage, the use of common insurance terms reveals that the parties regarded PRISM as the functional equivalent of an insurance company. Second, the contract specifies that PRISM is a "company" even

though it is technically a joint powers authority. Finally, at the time of contracting, PRISM had a different name that included the word "Insurance" in it.[1]

AmTrust responds that self-insurance is effectively the opposite of insurance, so no such understanding about PRISM could have existed. In support, AmTrust relies heavily on a California statute that says self-insurance "shall not be considered insurance nor be subject to regulation under the Insurance Code." Cal. Gov't Code § 990.8(c). But even if that argument were rooted in the plain text of the contract— it is not—the statute AmTrust relies on does not dictate the result in this case. One could reasonably read the statute's "under the Insurance Code" language to modify both clauses such that (1) self-insurance shall not be considered insurance under the Insurance Code, and (2) self-insurance shall not be subject to regulation under the Insurance Code. Moreover, another part of the same statute says that "[t]he insurance authorized by this part may be provided by . . . [s]elf insurance." Cal. Gov't Code § 990.4.

AmTrust's reliance on *Orange County Water District v. Ass'n. of California Water Agencies Joint Powers Insurance Authority*, 63 Cal. Rptr. 2d 182 (Cal. Ct. App. 1997), is likewise inapposite. Critically, as the district court recognized, that case revolved around a dispute where the self-insured, risk-sharing pool was not a party to the contract. Here, PRISM is a party to the contract, and the contract is

---

[1] PRISM's former name was "CSAC Excess Insurance Authority."

otherwise littered with evidence demonstrating the parties' intent to include self-insurance, risk-sharing pools. Additionally, *Orange County Water District* dealt substantively with the actual payment of insurance. The dispute before us is confined to an arbitration provision. As the district court noted, "the whole point of the selection process was to allow each side to pick an arbitrator representative of its general interests," so PRISM's interpretation of "insurance" is "consistent with the specific process that the parties agreed to for selection of the arbitration panel."

2. PRISM also did not fail to name an arbitrator. AmTrust contends that PRISM "fail[ed] to appoint its arbitrator within 30 days after receipt of notice requesting arbitration" because PRISM's first arbitrator was unqualified. But the natural reading of the contract does not suggest that a good-faith effort to appoint an arbitrator who turns out to be unqualified is the same as failing to appoint an arbitrator entirely.

AmTrust argues that *Compania Portorafti Commerciale, S.A. v. Kaiser International Corp.*, 616 F. Supp. 236, 238 (S.D.N.Y. 1985), demonstrates that the mere inclusion of a "time is of the essence" clause can transform an appointed-but-not-qualified individual into a complete failure to appoint. Yet *Compania* says only that "minimal delays in appointing an arbitrator do not deprive the defaulting party of its right of appointment unless the contract makes time of the essence." *Id.* Here, an arbitrator was appointed within the appropriate time. It just so happens that the

4

appointed individual was unqualified. The question is simply whether that appointment amounts to a total failure to appoint an arbitrator, such that PRISM must surrender its rights under the contact. We think not. AmTrust contends that holding for PRISM would open the door for parties to perpetually delay arbitration by nominating one unqualified arbitrator after another. But any such strategy would fail for a lack of good faith—and we find no such lack in this case.

**AFFIRMED.**