DAVID T. PROSSER, J.
¶ 73. {concurring in part, dissenting in part). The court of appeals reversed the circuit court, concluding that a party in an arbitration "generally may not seek immediate circuit court review of an arbitration panel's intermediate decision. Instead, the party must wait and challenge that decision by seeking to vacate the panel's final award, pursuant to Wis. Stat. § 788.10."[1] The majority opinion affirms this determination, and I join that portion of the majority opinion that discusses the issue under the heading "The Interlocutory Appeal."
¶ 74. The court of appeals also reversed the circuit court by approving the arbitration panel's interpretation of a sentence in the arbitration provision of an insurance contract that arguably related to discovery. The majority opinion rejects this part of the court of *502 appeals determination. Although I do not necessarily agree with all the language in the court of appeals opinion, I believe the holding on the second issue was essentially correct. Because the majority opinion comes to a different conclusion, I respectfully dissent from "The Discovery Dispute" portion of the opinion.
I. FACTUAL BACKGROUND
¶ 75. Mary and Leslie Marlowe (the Marlowes) were involved in an automobile accident with an uninsured motorist. They made a claim for uninsured motorist coverage from their insurer, IDS Property Casualty Insurance Company (IDS). The Marlowes and IDS agreed to arbitrate the claim as provided in the Marlowes' insurance policy, and thereafter a three-member arbitration panel was selected.
¶ 76. A discovery dispute soon developed. IDS says that it sought discovery "to verify the existence and extent of the Plaintiffs' various alleged injuries." It explained that:
Such discovery is necessary because it goes to the essence of the claims that the Marlowes have put in issue, namely the existence and extent of their alleged injuries. The alleged injuries arise from a rear-end vehicle accident with minimal damage to the vehicle, but with claimed medical specials already exceeding $60,000.00, and with a claim for permanent injury.
¶ 77. The Marlowes asserted in the complaint that started this case that IDS "attempted to pursue discovery of the plaintiffs through the use of written interrogatories, requests for production of documents, medical and employment authorizations, income tax return releases, depositions of the plaintiffs and treating healthcare providers, and defense medical examinations." IDS admitted these allegations in its answer.
*503 ¶ 78. The Marlowes refused to comply with IDS's discovery demands.
¶ 79. IDS then asked the arbitration panel to interpret language in the arbitration provision in relation to the discovery dispute. IDS claimed that a sentence in the provision — namely, "Local rules of law as to procedure and evidence will apply" — authorized discovery pursuant to the procedures in Wis. Stat. ch. 804, which is the chapter, in Wisconsin's code of civil procedure, on "Depositions and Discovery."
¶ 80. In October 2010 the arbitration panel issued a unanimous decision interpreting the "Local rules of law" sentence as applying to Chapter 804 of the Wisconsin Statutes. The panel recognized that this court's decision in Borst v. Allstate Insurance Co., 2006 WI 70, 291 Wis. 2d 361, 717 N.W.2d 42, "drastically circumscribe[d] the discovery that can be taken in arbitration proceedings." However, the panel relied upon an approved exception to the limited-discovery rule that permits expanded discovery when the parties' contract expressly provides for it. The panel concluded that the "Local rules of law" sentence denoted "the civil rules of procedure that govern court proceedings daily in local courtrooms." The panel asserted that Chapter 804 does "not contemplate unfettered discovery" but rather "discovery that is quick and efficient, but cost effective." The panel put limitations on future depositions and noted that a formal advance order would be required for any physical examination of Mary Marlowe.
¶ 81. Significantly, the arbitration panel declared: "Nothing in Borst, or any other decision cited, deprives the panel of authority to implement the clear terms of the agreement that govern the parties' relationship. Indeed, that is the panel's responsibility."
*504 ¶ 82. Through their attorneys, the Marlowes filed a lengthy and well-argued letter brief seeking reconsideration of the panel's decision. Many of the points made in the brief are adopted by the majority opinion. However, the Marlowes' brief conceded that the panel's "construction of this ambiguous policy language is one that could be reasonably made."
¶ 83. The panel responded by issuing a supplementary decision affirming its ruling and answering the points in the Marlowes' brief. The supplementary decision relied in part on Lukowski v. Dankert, 184 Wis. 2d 142, 515 N.W.2d 883 (1994).
¶ 84. In Lukowski, the plaintiff suffered personal injuries when the truck in which she was riding overturned and she was ejected through the sunroof. Id. at 146. When the plaintiff made a claim against her insurer for uninsured motorist coverage, her claim was submitted to arbitration. Id. at 146-47. The arbitration panel determined the full extent of the plaintiffs damages but reduced her award by 40 percent because the plaintiff had not been wearing a seatbelt. Id. at 147. In other words, the panel found the plaintiff 40 percent causally negligent for her injuries — and it did so without expert testimony presented by the insurer, as was normally required under Wisconsin case law. Id. at 147-48.
¶ 85. Ms. Lukowski's insurance policy contained the identical language contained in the Marlowes' policy: "Local rules of law as to procedure and evidence will apply."[2] Id. at 152. All parties in Lukowski interpreted this language to refer to Wisconsin law. The plaintiff asserted that the arbitration panel had not *505 followed Wisconsin case law. Id. at 151. The insurer insisted that the panel had acknowledged Wisconsin law but distinguished the plaintiffs case from other cases on grounds that expert testimony was not required when a party's injuries resulted from her ejection from the vehicle because she did not wear a seatbelt.
¶ 86. This court ratified the parties' interpretation of the sentence on "Local rules of law": "[T]he parties had a legitimate expectation that the governing law would be followed and applied properly." Id. at 152 (footnote omitted). The governing law on procedure and evidence was deemed to be Wisconsin law in statutes and cases. See id. at 154.
¶ 87. In the present case, the arbitration panel construed the "Local rules of law" sentence the same as the arbitration panel, the court of appeals, and this court had construed it in Lukowski. The Brown County Circuit Court overturned the panel's construction, and the court of appeals then reversed the circuit court. The majority now sides with the circuit court.
II. DISCUSSION
¶ 88. The majority opinion is grounded on the premise that arbitrations are different from civil court trials. This premise is unassailable. However, the majority uses the premise to severely restrict arbitration discovery not only under the arbitration statutes but also under the parties' insurance contract — notwithstanding applicable language to the contrary. In the process, the majority opinion undercuts the contractual authority of arbitrators and creates a serious disincentive for parties to agree to arbitration. In sum, despite its good intentions, the majority opinion goes too far.
*506 A. The Borst Certification
¶ 89. In the Borst case, the court of appeals certified three questions including the following: "Other than the deposition procedure outlined in Wis. Stat. § 788.07, is the nature and extent of discovery during the arbitration process governed by contract, the arbitrators' inherent authority, or a combination of the two?" Borst, 291 Wis. 2d 361, ¶ 2. The Borst court summarized its answer as follows: "Arbitrators have no inherent authority to dictate the scope of discovery, and absent an express agreement, the parties are limited to the procedure for depositions, as described in Wis. Stat. § 788.07." Id., ¶ 3.
¶ 90. The question posed in the Borst certification was provocative because of its reference to the "inherent authority" of arbitrators. In Lukowski, the court had declared that "[a]n arbitrator obtains authority only from the contract of the parties and therefore is confined to the interpretation of that contract." Lukowski, 184 Wis. 2d at 152; see also Nicolet High Sch. Dist. v. Nicolet Educ. Ass'n, 118 Wis. 2d 707, 714, 348 N.W.2d 175 (1984); Milwaukee Prof'l Firefighters, Local 215 v. City of Milwaukee, 78 Wis. 2d 1, 21, 253 N.W.2d 481 (1977). Thus, the certified question posited an option that this court had rejected repeatedly.
¶ 91. The certified question appears to have diverted the court's attention from the possibility that the arbitration statutes themselves provide authority for other discovery, and led to the court's creation of non-statutory obstacles for arbitrators in construing contracts that provide for arbitration. These conclusions are admittedly much clearer to me in hindsight than they were when I joined the Borst opinion in 2006. They require explanation.
*507 B. The Borst Decision
¶ 92. Looking solely at the arbitration statutes, one perceives two sections that bear on discovery: Wis. Stat. §§ 788.06 and 788.07. All the attention has been focused on § 788.07, which reads:
Depositions. Upon petition, approved by the arbitrators or by a majority of them, any court of record in and for the county in which such arbitrators, or a majority of them, are sitting may direct the taking of depositions to be used as evidence before the arbitrators, in the same manner and for the same reasons as provided by law for the taking of depositions in suits or proceedings pending in the courts of record in this state.
¶ 93. The Borst court explained the factual background of that case when it interpreted Wis. Stat. § 788.07. Plaintiff Borst was injured in an accident with an uninsured motorist. Borst, 291 Wis. 2d 361, ¶ 5. The insurer believed that Borst was 50 percent liable for the accident. Id,., ¶ 6. It requested that all medical records related to the plaintiffs claim be transmitted to it after Borst finished his treatment. Id. Borst provided these records as well as records of his wage loss. Id., ¶ 7.
¶ 94. After an arbitration panel was created, Allstate served Borst with "a set of written interrogatories, a request for document production, and medical authorizations." Id., ¶ 10. These requests were resisted and challenged in a motion to the arbitration panel to quash the discovery. Id. Allstate then raised the stakes, asking the panel to approve a deposition and to authorize a release of records. Id. The panel ultimately ordered Borst to (1) give a deposition, (2) supply medical authorizations, and (3) cooperate with other appropriate *508 discovery. Id. In its argument to the panel, Allstate relied heavily on the proof of claim provisions in the insurance policy. Id.
¶ 95. Borst refused to submit to a deposition, and Allstate elected not to press that issue, although it did not waive its "right" to a deposition of Borst. Id., ¶ 11. It did depose the other driver involved in the accident, while Borst provided a list of damages and confirmed the accuracy of all pre-arbitration discovery. Id.
¶ 96. The Borst court summarized the parties' arguments:
Borst essentially contends that discovery in arbitration is the exception and not the rule. Borst argues that in an arbitration of a first party insurance claim, and absent extraordinary circumstances, the parties should simply submit their cases to the arbitrators. Unfettered discovery, Borst argues, defeats the general purposes of arbitration to be faster, less formal, and less expensive.. . . Furthermore, in this particular case, Borst maintains that there was no real need for discovery, given that there was no claim of permanent injury, the medical records and bills had been supplied, and Allstate claimed to have fully assessed liability before it made its offer [of $5,000 to settle the case].
Id., ¶ 54 (emphasis added).
¶ 97. Allstate argued that inasmuch as the legislature allowed for the taking of depositions during arbitration, it must have allowed for other less costly forms of discovery and that arbitrators should have discretion, based on their evaluation of the facts of the case, to determine the extent of the discovery permitted. Id., ¶ 55.
¶ 98. The Borst court then said:
We conclude that arbitrators have no inherent *509 authority to dictate the scope of discovery, and absent an express agreement to the contrary, the parties are limited to depositions as spelled out in Chapter 788....
In our view, arbitrators do not have the inherent authority to determine the necessity and scope of discovery allowed because, quite simply, there is no statutory authority providing for discovery outside of the procedures for depositions enumerated in Wis. Stat. § 788.07.
Id., ¶¶ 56-57.
¶ 99. The court asserted that Wis. Stat. § 788.07 did not speak to "interrogatories, requests for production, or medical authorizations. Indeed, even looking beyond this particular section, the Wisconsin Arbitration Act does not speak to any other form of discovery." Id., ¶ 58.[3]
¶ 100. There is no dispute that the Borst case is the controlling law in Wisconsin and applies here unless it is clarified, modified, or distinguished on the facts. In my view, this court should pursue all these options.
C. The Applicable Statutes
¶ 101. The court should carefully review Borst's interpretation of the arbitration statutes vis-á-vis discovery. Borst did not consider any alternative interpretation of Wis. Stat. § 788.07 and it did not interpret Wis. Stat. § 788.06 at all.
*510 ¶ 102. Wisconsin Stat. § 788.07, by its terms, requires a party to petition for a deposition. The petition must be "approved by the arbitrators or by a majority of them," and then submitted to "any court of record in and for the county in which such arbitrators . . . are sitting." Wis. Stat. § 788.07. The statute appears to set up a very rigorous process for obtaining the deposition of either a party or a non-party because it requires the party seeking a deposition to go to court.
¶ 103. In Employers Insurance of Wausau v. Jackson, 190 Wis. 2d 597, 610, 613, 527 N.W.2d 681 (1995), this court observed that the basic tenet of arbitration is avoiding the courts. Thus, Wis. Stat. § 788.07 can be viewed as setting up a barrier to one of the most intrusive and expensive forms of discovery, rather than precluding less costly forms that might obviate the need for a deposition.[4]
¶ 104. This alternative view of the statute is arguably inconsistent with the doctrine of expressio unius est exclusio alterius ("the express mention of one matter excludes other similar matters [that are] not mentioned"). See FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶ 27, 301 Wis. 2d 321, 733 N.W.2d 287. But it is perfectly consistent with insurance contracts that give an insurer broad authority to obtain "proof of claim" information from its insured in processing a claim.[5] That form of "discovery" does not require statutory authority. In my view, it is difficult to explain why the *511 law would permit depositions but prohibit more modest, less costly means of obtaining pre-hearing discovery.[6]
¶ 105. This alternative view also is consistent with a reasonable interpretation of Wis. Stat. § 788.06(2), a provision of the arbitration statutes that has heretofore been ignored. That subsection provides:
(2) Any arbitrator may issue a subpoena under ch. 885 or may furnish blank forms therefor to a representative for any party to the arbitration. The representative may issue a subpoena under s. 805.07. The arbitrator or representative who issues the subpoena shall sign the subpoena and provide that the subpoena is served as prescribed in s. 805.07(5). If any person so served neglects or refuses to obey the subpoena, the issuing party may petition the circuit court for the county in which the hearing is held to impose a remedial sanction under ch. 785 in the same manner provided for witnesses in circuit court. Witnesses and interpreters attending before an arbitration shall receive fees as prescribed in s. 814.67.
¶ 106. The majority contends that neither an arbitrator nor the representative of a party may issue a subpoena or a subpoena duces tecum for anything connected with discovery. Majority op., ¶ 34. It contends that all subpoenas issued under Wis. Stat. § 788.06 must be for the hearing itself. Id. This makes little sense. The attendance of witnesses at a deposition may be compelled by subpoena. Wis. Stat. §§ 804.05(1), 805.07. A subpoena may be served requiring a person to produce designated materials. Wis. Stat. § 804.05(2)-(3). Although a deposition may proceed without a subpoena, a subpoena may be necessary if a witness fails to comply *512 with other notice. If a subpoena may be issued for a deposition, then Wis. Stat. § 788.06 is not limited to subpoenas for hearings.[7]
¶ 107. Wisconsin Stat. § 788.06 twice refers to Wis. Stat. § 805.07, which specifically includes subpoenas for depositions, § 805.07(1), as well as subpoenas requiring the production of materials such as books, papers, and documents, § 805.07(2). Section 788.06 also provides that if a subpoena is not obeyed, "the issuing party [that is, the party that issued the subpoena] may petition the circuit court for the county in which the hearing is held to impose a remedial sanction." (Emphasis added.) The emphasized language implies that the circuit court does not normally issue the subpoena for a deposition. In addition, it would be curious if arbitrators who had issued subpoenas for the hearing had to petition the circuit court for a remedy if their subpoenas were not obeyed.
¶ 108. The present Wis. Stat. § 788.06 became law in 1986. See 1985 Wis. Act 168. The revised law, championed by the Wisconsin Judicial Council, created a much more expansive subpoena provision than the previous statute and was intended to "conform[] arbitration subpoena practice to that followed in circuit court." Judicial Council Committee Note, 1985, Wis. Stat. § 788.06. Subpoena practice in circuit court includes discovery.
¶ 109. Once again, the present section refers twice to Wis. Stat. § 805.07; the previous section, Wis. Stat. § 788.06 (1983-84), made no such reference. The *513 present section extends the subpoena power to the representative of a party (including but not limited to an attorney), in addition to arbitrators. The present section is not limited by its terms to the hearing, as the previous section was.[8] In short, the majority's conclusion that the statute applies only to subpoenas for hearings is strained at best.
¶ 110. The previous Wis. Stat. § 788.06 mirrored 9 U.S.C. § 7, which is narrowly written.[9] Nonetheless, *514 § 7 of the Federal Arbitration Act has been interpreted to permit discovery, unless the discovery involves non-parties.[10] This could explain why Wis. Stat. § 788.07, which has no parallel in the Federal Arbitration Act, was created — namely, to make depositions more difficult to obtain than other discovery.
¶ 111. In sum, Borst's interpretation of Wis. Stat. § 788.07 created a restrictive rule, but that rule disregarded the adjacent statute and may have misinterpreted the purpose of the deposition statute.
D. Insurance Contract Provisions
¶ 112. The Borst case does not explain the relationship between statutory authority for discovery in an arbitration proceeding and contractual provisions *515 that require an insured to provide information to its insurer. In Borst, the plaintiffs medical records and bills and wage loss records were supplied to the insurer. Borst, 291 Wis. 2d 361, ¶¶ 7, 54. Borst's initial position was to resist a deposition, which was clearly authorized by statute. The Borst court stated that "absent a contractual provision specifying how discovery will be handled, the parties are limited to the discovery procedures provided in the statutes." Id,., ¶ 59. But the decision does not explain whether contractual provisions requiring such items as medical records and even a medical examination are included in "discovery."
¶ 113. The majority opinion in this case goes beyond Borst because it appears to nullify clear and sensible requirements in the insurance contract for the insured to supply information to the insurer in those situations where the parties agree to arbitration. The majority directs the arbitration panel, on remand, "to cabin discovery to the depositions contemplated in § 788.07, i.e., 'depositions to be used as evidence before the arbitrators.'" Majority op., ¶ 2; see also id., ¶ 11 ("[W]e return the action to the panel with instructions to limit discovery to the section enacted by the legislature for precisely these situations: Wis. Stat. § 788.07."); id., ¶ 23 ("[W]e instruct the arbitration panel to limit discovery to that provided for in Wis. Stat. § 788.07."). The majority opinion sums up its second holding:
[T]he legislature has set forth, in the form of § 788.07, a narrow scope of discovery for arbitration proceedings in the absence of an explicit, specific, and clearly drafted arbitration clause to the contrary. IDS failed to include any such language in its policy and we therefore instruct the panel to limit discovery to that provided for in § 788.07.
Id., ¶ 2 (emphasis added).
*516 ¶ 114. The majority opinion appears to preclude the insurer from resorting to any provision outside the arbitration section of the insurance contract to obtain information that may be used to prepare for a possible arbitration hearing, i.e., prehearing discovery. Moreover, its tough new conditions — "explicit, specific, and clearly drafted" authority in the arbitration clause— provide a test that may supersede the parties' intentions.
¶ 115. The IDS insurance contract with the Marlowes is explicit, specific, and clear in this case:
What To Do In Case Of An Auto Accident Or Loss
1. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and any witnesses.
2. A person seeking any coverage must:
a. Cooperate with us in the investigation, settlement or defense of any claim or suit.
c. Submit, as often as we reasonably require:
(1) To physical exams by physicians we select. We will pay for these exams.
(2) To answer questions under oath when asked and by anyone we name. They shall do so separately, outside the presence of any other person who may be requested to answer questions under oath in connection with the loss. They must also sign copies of the answers.
d. Authorize us to obtain medical reports and other pertinent records.
*517 e. Submit a proof of loss when required by us.
Medical Expense Coverage
We will pay reasonable expenses for necessary medical (including chiropractic)... services incurred because of bodily injury sustained by an insured and caused by an accident.
We have the right to:
1. Obtain and use:
a. Peer reviews; and
b. Medical bill reviews
of the medical expenses and services to determine if they are reasonable and necessary for the bodily injury sustained.
2. Use a medical examination of the injured person to determine if:
a. The bodily injury was caused by a motor vehicle accident; and
b. The medical expenses and services are reasonable and necessary for the bodily injury sustained.
¶ 116. Here, IDS sought:
(a) written interrogatories.
(b) requests for production of documents.
(c) medical and employment authorizations.
(d) income tax return releases.
(e) depositions of the plaintiff.
(f) depositions of treating healthcare providers.
(g) defense medical examinations.
*518 ¶ 117. Depositions of the plaintiffs and of the treating healthcare providers are explicitly authorized by Wis. Stat. § 788.07.
¶ 118. A defense medical examination is authorized by the contractual requirements to submit to "physical exams by physicians we select" and "a medical examination of the injured person."
¶ 119. Requests for production of documents and "medical and employment authorizations" appear to overlap. These demands are grounded in the contractual authority "to obtain medical reports and other pertinent records," "proof of loss," and "[m]edical bill reviews."
¶ 120. Requests for income tax return releases may be related to plaintiffs medical expense deductions and/or plaintiffs income over time. Such returns would have to be relevant and might require justification to the arbitrators but they are certainly not irrelevant per se.
¶ 121. Written interrogatories can be construed as falling under the requirement to "answer questions under oath when asked."
¶ 122. This case is factually different from the Borst case. Plaintiff Borst maintained that "there was no real need for discovery, given that there was no claim of permanent injury, the medical records and bills had been supplied, and Allstate claimed to have fully assessed liability" before it made a settlement offer. See ¶ 96, supra. Here, purportedly, there is a claim of permanent injury, and a request for medical records and bills that have not been supplied; furthermore, causation is at issue. See ¶ 76, supra.
¶ 123. Consequently, I believe it is imperative for the majority to explain why the discovery sought by IDS was not explicitly authorized by the insurance contract. *519 If an insurer's agreement to participate in arbitration serves to nullify the insurer's contractual rights to obtain information from its insured, insurers will face a powerful disincentive to agree to arbitration, and the arbitration of contractual disputes will suffer a major setback.
E. Standard of Review
¶ 124. There is one additional concern. I believe the majority opinion misstates the standard of review in relation to the arbitration panel's discussion of discovery.
¶ 125. The arbitration panel based its discovery ruling on a sentence in the arbitration provision of the insurance contract, namely, "Local rules of law as to procedure and evidence will apply." As the majority opinion notes, the panel declared that: "The term 'local rules of [law as to] procedure[,'] as the policy employs it, is both clear and informative. It denotes the civil rules of procedure that govern court proceedings daily in local courtrooms." Majority op., ¶ 5. The panel added that, "If the purpose of arbitration is to achieve an expedited, efficient decision that ultimately determines the truth, more, not less, preparation for hearing is the most sensible way to achieve that, a goal the contract contemplates."
¶ 126. When an arbitration panel interprets a provision in an applicable contract, the panel's interpretation should be afforded some deference in review by a court. Such deference is captured by the concept of "perverse misconstruction."
¶ 127. "Courts will vacate an award when arbitrators exceeded their powers through 'perverse misconstruction,' positive misconduct, a manifest disregard of *520 the law, or when the award is illegal or in violation of strong public policy." Baldwin-Woodville Area Sch. Dist. v. W. Cent. Educ. Ass'n, 2009 WI 51, ¶ 21, 317 Wis. 2d 691, 766 N.W.2d 591 (citations omitted). A court must apply the standard of review that is appropriate for the facts of the case.
¶ 128. An arbitration award involving the interpretation of a contract will not be disturbed unless it is the product of a perverse misconstruction of the contract, City of Oshkosh (Public Library) v. Oshkosh Public Library Clerical & Maintenance Employees Union Local 796-A, 99 Wis. 2d 95, 106, 299 N.W.2d 210 (1980) (citing cases), or unless the contract itself violates the law. Here, the appropriate standard is the "perverse misconstruction" standard because Borst permits the scope of discovery to be set out in the contract.
¶ 129. In Baldwin-Woodville, the court stated:
[Wle do not determine which construction — the arbitrator's or the District's — is more reasonable. See Lukowski, 184 Wis. 2d at 153 ("[T]his court will not upset the award even if this court might have decided the matter differently."). Instead, we will uphold an award if there is "some reasonable foundation for the interpretation of the contract offered in the decision." Id.
Baldwin-Woodville, 317 Wis. 2d 691, ¶ 22.
¶ 130. The majority would be hard pressed to argue that there is no reasonable basis for the panel's construction of the "Local rules of law" sentence in the arbitration provision of the contract. After all, the Marlowes' attorney conceded that the construction was "reasonably made." Moreover, the sentence — which is not unique to the Marlowes' insurance contract — must mean something, and it is not plausible that the sen *521 tence was intended to mean that arbitrators are bound by rules of procedure and evidence established by the circuit courts — county by county — but need not follow the procedural and evidentiary rules embodied in state law.
¶ 131. The majority's standard of review cites the perverse misconstruction standard but then disregards it. Majority op., ¶ 10.
¶ 132. Clearly, a contract may authorize prehearing discovery in an arbitration proceeding. It is not manifest disregard of the law or a violation of strong public policy to do so. The issue here is whether the contract's reference to "Local rules of law" achieved this purpose. This court is required to give a deferential review of the arbitration panel's construction of the contract language, not rely on extraneous law.
¶ 133. Proper application of the perverse misconstruction standard would put this case in a different light.
III. CONCLUSION
¶ 134. Once again, the theme that permeates the majority opinion is that arbitrations are different from civil court trials and thus discovery in arbitration should be wholly different from discovery in court cases.
¶ 135. I agree that arbitration discovery should normally be simpler and more streamlined than civil court discovery. Arbitrators have a vested interest in making arbitration work as intended. Thus, depriving arbitrators of virtually all authority to manage prehearing discovery, consistent with the goals of arbitration, and forcing the parties to discover evidence and present *522 evidence primarily at the arbitration hearing, strike me as undercutting arbitration, not facilitating it. After this decision, time will tell.
¶ 136. For the foregoing reasons, I respectfully concur in part and dissent in part.

 Marlowe v. IDS Prop. Cas. Ins. Co., 2012 WI App 51, ¶ 18, 340 Wis. 2d 594, 811 N.W.2d 894 (footnote omitted).

 The "Local rules of law" language was not present in the policy at issue in Borst v. Allstate Insurance Co., 2006 WI 70, 291 Wis. 2d 361, 717 N.W.2d 42.

 Attorney Mark Frankel submitted an amicus brief in the Borst case on behalf of the Alternative Dispute Resolution (ADR) Section of the State Bar of Wisconsin. After the Borst decision was issued, Frankel wrote an analysis of the case for the Wisconsin Lawyer, observing that Borst's holding that "arbitrators have no inherent ability to determine the necessity and scope of allowable discovery" was a "surprise" to many practitioners in the field of ADR. Mark A. Frankel, Borst Clarifies Arbitration Procedures, Wis. Law., Dec. 2006, at 8, 11.

 See Carlson Heating, Inc. v. Onchuck, 104 Wis. 2d 175, 180, 311 N.W.2d 673 (Ct. App. 1981) (stating that adequate preparation by counsel, "with full knowledge of the facts before them[,]" will result in more orderly trials and in many instances will avoid needless trials). The same principle applies to depositions and to arbitration hearings.

 See subpart D, infra.

 Query: Does Wis. Stat. § 788.07 contemplate depositions upon written questions, as authorized under Wis. Stat. § 804.06? If it does, why would interrogatories be prohibited?

 The title of Wis. Stat. § 788.06 — "Hearings before arbitrators; procedure" — covers two subsections, the first subsection related to hearings and the second subsection related to procedure. The procedure applies to more than hearings because of the references to Wis. Stat. § 805.07.

 Wisconsin Stat. 788.06 (1983-84) provided:
When more than one arbitrator is agreed to, all the arbitrators shall sit at the hearing of the case unless, by consent in writing, all parties shall agree to proceed with the hearing with a less number. The arbitrators selected either as prescribed in this chapter or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with the person any book, record, document or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses in courts of general jurisdiction. The summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrator or arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the court in and for the county in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner now provided for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of this state.
(Emphasis added.)

 9 U.S.C. § 7 provides:
The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. *514 The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

 See, e.g., Life Receivables Trust v. Syndicate 102 at Lloyd's of London, 549 F.3d 210 (2d Cir. 2008); Stanton v. Paine Webber Jackson & Curtis, Inc., 685 F. Supp. 1241 (S.D. Fla. 1988); Gabriel Herrmann, Note, Discovering Policy Under the Federal Arbitration Act, 88 Cornell L. Rev. 779, 791-92 (2003) ("[C]ourts have generally construed [§ 7 of the Federal Arbitration Act] as granting arbitrators the power to order the parties to submit to pre-hearing discovery.").